UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dirck Hecking

    v.

Katherine J. Barger,
James D. Casey, and
George N. Copadis

Civil No. 1:08-cv-490-JL
Opinion No. 2010 DNH 032

**OPINION AND ORDER**

This case involves the limitations period applicable to civil rights claims. The plaintiff, Dirck Hecking, filed this pro se § 1983 action, see 42 U.S.C. § 1983, against three current and former officials of the New Hampshire Department of Labor[1] alleging violations of his due process and equal protection rights after his claim for workers' compensation was denied.[2]

---

[1] Defendant Barger, at times relevant to this case, was the Director of the Workers' Compensation Division of the New Hampshire Department of Labor, see generally N.H. Rev. Stat. Ann. § 273:4-a. Defendants Casey and Copadis are, respectively, the former and current Commissioners of the New Hampshire Department of Labor. See generally N.H. Rev. Stat. Ann. § 273:1. Each defendant is being sued in his or her individual, not official capacity. See generally Mattatall v. R.I., No. CA 07-234 ML, 2009 WL 3514634, at *3 (D.R.I. Oct. 29, 2009) (state officials not amenable to § 1983 suit in official capacity).

[2] Am. Compl. at 1; Pl.'s Reply at 6. The defendant also makes passing reference to his "Constitutional Right to . . . Free Speech," Am. Compl. at 1, and "New Hampshire [Constitution] part 1, Article 14 right not to have to buy justice." Pl.'s Reply at 6. The court will not address these claims, as mere

See generally U.S. Const. amend. XIV; N.H. Rev. Stat. Ann. ch. 281-A (workers compensation statute).  Hecking contends that the defendants violated his rights because they failed to "protect" him from allegedly fraudulent acts by his former employer and the employer's insurance carrier that led to the denial of benefits.[3]

---

passing reference to a federal constitutional right or simple allegation of a right under a state constitution without elaboration is not sufficient to survive a motion to dismiss. See Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).

   [3] Hecking's pleadings are not a model of clarity.  In his reply to the defendants' motion to dismiss, Hecking repeatedly "clarifies" the meaning of the allegations in his complaint. See, e.g., Pl.'s Reply at 6, 16.  Courts typically decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to the complaint). See Parker v. Hurley, 514 F.3d 87, 90 n.1 (1st Cir. 2008).  In this instance, the court may properly base its analysis of Hecking's claim on clarifications made in the reply as it is well-settled that where a plaintiff is proceeding pro se, courts may "examine . . . other pleadings to understand the nature and basis of [a pro se plaintiff's] claims." Dellairo v. Garland, 222 F. Supp. 2d 86, 89 (D. Me. 2002); see Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that district court abused its discretion when it failed to consider the pro se plaintiff's complaint in light of his reply to the motion to dismiss); Manuel v. City of Bangor, No. 09-CV-339-B-W, 2009 WL 3398490, at *1 (D. Me. Oct. 21, 2009).

   In particular, the court relies on Hecking's assertion that the defendants "are not *per se* being charged for violating [the] workmen's [sic] compensation rules applicable to employer/insurer actions. . . . [T]hey are being charged for not doing everything necessary and proper to protect [Hecking] from employer/insurer frauds while subject to their narrow, ardent, non-custodial, system, among other things." Pl.'s Reply at 6 (underline and quotations omitted).  This logically can be discerned from Hecking's claim in the amended complaint that the defendants are

He seeks more than $5 million in money damages.  See Am. Compl. at 1, 28.

The defendants moved to dismiss, arguing that the complaint fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), and is time barred.[4]  This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  Hecking's suit is dismissed as untimely.[5]  Hecking knew as early as 2003 that the defendants would not investigate his allegations of fraud any further, but did not

---

"charged throughout this plea for behaving badly, secretly, willfully and with reckless indifference to the truth, in selectively administering the tenets of [N.H. Rev. Stat. Ann. ch. 281-A] . . . ."  Am. Compl. §I(1).

[4] See generally Greenwood v. N.H. Pub. Util. Comm'n., 527 F.3d 8, 13-14 (1st Cir. 2008); N.H. Rev. Stat. Ann. § 508:4 (three-year statute of limitations for personal actions).  The argument that a claim is barred by the statute of limitations raises an affirmative defense (not a jurisdictional defect), and it may be considered under Federal Rule 12(b)(6).  See, e.g., Edes v. Verizon Comm'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Bergstrom v. Univ. of N.H., 959 F. Supp. 56, 58 (D.N.H. 1996) (DiClerico, C.J.).

[5] The parties should not infer that the defendants' other asserted grounds for dismissal were without merit.  Indeed, although Hecking's reply clarifies the amended complaint such that the court will not concern itself with what at first appeared to be claims against non-parties, or requests for relief not provided for by the workers' compensation statute, it is doubtful that the "clarified claim" sets forth a constitutional violation remedied by § 1983.  See generally Estate of Bennett, 548 F.3d at 162 (requirements of a § 1983 action).

3

file suit until 2008, well beyond the applicable limitations period.

I.  **APPLICABLE LEGAL STANDARD**

When considering a Rule 12(b)(6) motion, the court must take as true all the plaintiff's well-pleaded facts and draw all reasonable inferences arising from them in the plaintiff's favor. Estate of Bennett, 548 F.3d at 162; see, e.g., Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). Although a complaint "does not need detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), the court must reject "unsupported conclusions or interpretations of law," Estate of Bennett, 548 F.3d at 162 (quotations omitted), and the "allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Pleadings that "are no more than conclusions are not entitled to the assumption of truth." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (quotations omitted) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)).

Of course, a pro se plaintiff's complaint must be read with an extra degree of solicitude, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and is held to a less stringent standard than

one drafted by a lawyer. Id. at 520; cf. Donovan v. Maine, 276 F.3d 87, 94 (1st Cir. 2002). Despite this deferential reading, however, a court is not required "to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like need not be credited." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Rather, the court must ensure "that each general allegation [is] supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990).[6]

To avoid Rule 12(b)(6) dismissal, therefore, a complaint "must possess enough heft to set forth a plausible entitlement to relief." Estate of Bennett, 548 F.3d at 162 (quotations omitted); see, e.g., Iqbal, 129 S.Ct. at 1949; Sanchez, 590 F.3d at 49. "Put differently," dismissal is appropriate "if the

---

[6]Further, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983); Brewster v. Nassau County, 349 F. Supp. 2d 540, 545-46 (E.D.N.Y. 2004). Courts need not "accept conclusory allegations on the legal effect of the events [that a] plaintiff has set out if these allegations do not reasonably follow from his description of what happened." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) (quoting Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977)); Brewster, 349 F. Supp. 2d at 546 (although court must accept the facts alleged in the non-movant's complaint, "conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss" (quotations omitted)); see also In re Am. Exp. Co. Shareholder Litig., 39 F.3d 395, 400 n. 3 (2d Cir. 1994).

5

complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face." Gray, 544 F.3d at 324 (quotations omitted).

II. **BACKGROUND**

As required on a motion to dismiss, the court accepts as true all well-pleaded facts in Hecking's amended complaint, indulging all reasonable inferences in Hecking's favor. See, e.g., id.; Aulson, 83 F.3d at 3. In this pro se action, the court also relies, in part, on materials attached to the complaint, which may be considered as part of the complaint when determining a Rule 12(b)(6) motion. See, e.g., Dellairo, 222 F. Supp. 2d at 89 n.4.

In September 2001, Hecking was hired as a pilot by Pan American Airways in Portsmouth, New Hampshire. Hecking asserts that he began his employment relationship with Pan Am by attending several weeks of training in New Hampshire.[7] A few months into his training, Hecking participated in "wet ditching drills" conducted in the water at the Portsmouth High School pool. Hecking left New Hampshire shortly after the "wet ditching drills" and traveled to Miami. During this period, he fell ill,

---

[7]Although unclear from the pleadings, it appears that there was a dispute about the nature of Hecking's employment.

and began experiencing "episodic dizziness," which "increased in frequency and depth until it never stopped." Am. Compl. at 22. He eventually went to the emergency room of the Miami Veteran's Administration Hospital vomiting, lethargic, and dizzy. The hospital staff diagnosed Hecking with "labrynthitis, caused by [an] ear infection secondary to prolonged exposure to water (swimming)." Hecking continued to struggle during training, and was eventually dismissed by Pan Am in December 2001.

Hecking filed a claim with Pan Am for workers' compensation benefits based on his water-exposure problems, but Pan Am denied it in January 2002. Hecking then brought his claim before the Department of Labor. Pan Am and its insurance carrier submitted various materials to the Department for use in reviewing the claim. Hecking believed that the materials were false and that their submission constituted mail and wire fraud by Pan Am and its insurer.

In August 2003, before the Department had completed its review, Hecking sent defendant Barger a letter complaining of the alleged fraud. He stated that any potential administrative remedy "could not bring me equitable relief" and that he intended "to proceed in the United States District Court for the Southern District of Indiana, after the existing denial [of benefits] is overturned" by the Department. R. § 27(c). He followed up with

an additional letter on September 18, 2003, to which Barger replied that because "there is no evidence in the file that would support a legal finding of fraud[,] ... I respectfully decline to proceed any further with your allegations." R. § 27(g). In October 2003, Hecking wrote yet another letter to Barger, accusing her of allowing "lies fraud and deceit to go on in this case." R. § 27(a).

The Department denied Hecking's workers' compensation claim on October 14, 2003. See generally, N.H. Rev. Stat. Ann. § 281-A:43. Hecking then appealed to the Compensation Appeals Board ("CAB"), which conducted a de novo hearing in September 2006 and reached the same conclusion--i.e., that Hecking was not entitled to benefits.[8] See id. Hecking asked the New Hampshire Supreme Court to review that decision, but his petition was declined. He then filed additional petitions with the Department in April and May 2007 and January 2008 seeking a "declaratory judgment" with respect to the Department's alleged "failure to purge the case of

---

[8] R. §70 at 1, 6. The board concluded that Hecking failed to demonstrate that his medical condition arose out of his employment with Pan Am. The CAB noted that there was conflicting medical evidence presented regarding the cause of Hecking's injury but that "[g]iven the differences in the medical records and that of the claimant's conflicting and self-serving testimony at the appeal hearing, and although it appears that the claimant sincerely believes in his case, the board questions the veracity of the claimant, and does not find the claimant credible." Id. at 5.

8

[Pan Am's] multiple frauds." The petitions apparently were not answered to Hecking's satisfaction, so he filed this § 1983 action on November 26, 2008.

As noted earlier, see supra note 3, Hecking has not asked this court to review the Department's denial of his workers' compensation claim. Rather, his § 1983 claims relate to the defendants' alleged failure to protect him from Pan Am's alleged mail and wire fraud,[9] which he claims the defendants had "more than six years to contemplate." He contends that "[t]hey all were put well on notice [by] him and simply by the nature of their job tenets of responsibility, duty and authority." Am. Compl. at 3.[10]

---

[9] He asserts that after Pan Am and its insurance carrier "mail[ed] and wir[ed] fraud" in the documentation submitted to the Department of Labor, the defendants did "not [do] everything necessary and proper to protect him from the resident evil concealed within said frauds, after the false statements on state government forms crossed the threshold of the department of labor." Reply at 16 (emphasis omitted).

[10] Hecking makes clear that the "[d]efendants are not being charged regarding rules pertaining to parochial employer/insurer actions," rather, "they are being charged for not doing everything necessary and proper to protect Captain Hecking from employer/insurer frauds while subject to their narrow, ardent, non-custodial system . . . ." Reply at 6 (emphasis omitted); see also Am. Compl. at 27 (claiming that the defendants "interfered with his federal civil rights when they did not remove said intentional frauds from his claim and for not prosecuting the PAA/Kemper tortfeasors").

9

## III. **ANALYSIS**

The court grants the defendant's motion to dismiss on the basis that the complaint against the defendants is untimely.[11]

---

[11] The court also concludes that any claims against defendants Casey and Copadis are untenable because Hecking has not pled sufficient facts to establish a § 1983 claim under a supervisory liability theory. Liability is imposed if a supervisor was a direct participant in the "rights violating incident" or if Hecking can establish that the supervisor's "deliberate indifference toward the rights of third parties . . . had some causal connection to the subsequent tort." Sanchez, 590 F.3d at 49 (quotations omitted). Here, Hecking failed to even remotely demonstrate "an affirmative link, whether through direct participation or through conduct that amounts to condonation," see id. (quotations omitted), between Casey and Copadis and the allegation that Barger wrongfully refused to further investigate Hecking's allegations of fraud in 2003. Hecking made only conclusory allegations of liability, which "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quotations omitted) (quoting Iqbal, 129 S.Ct. at 1950).

To the extent that Copadis's personal responses to letters and appeals for action directed to him in 2007 and 2008 establish a colorable claim of direct participation in the alleged harm, those claims are likewise time barred as they are part and parcel of the continuing effect of Barger's initial administrative decision not to conduct any further investigation. See infra note 17.

Further, there are multiple allegations in the complaint that there was some form of conspiracy or "secret acts" between the defendants and Hecking's employer and insurer to deny Hecking workers' compensation benefits. Conclusory allegations of conspiracy that are not supported by references to material facts are insufficient to survive a motion to dismiss. See Estate of Bennett, 548 F.3d at 178. Indeed, to make such a showing, Hecking would need to allege sufficient facts to make a plausible showing of systematic corruption at the Department of Labor. Here, Hecking makes only sweeping, generalized allegations of conspiracy that are insufficient to support a conspiracy claim.

Section 1983 does not include its own limitations period, and in the absence of a federal limitations provision governing a federal cause of action, courts first look to the most analogous state statute of limitations. Cf. Edes, 417 F.3d at 138. "The limitation period applicable to a section 1983 claim is to be found in the general personal injury statute of the jurisdiction in which the claim arises." Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991); see Wallace v. Kato, 549 U.S. 384, 387 (2007); Moran Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008). In this case, the applicable limitations period is New Hampshire's three-year statute for personal actions. See N.H. Rev. Stat. Ann. § 508:4.

"Although the limitations period is determined by state law, the date of accrual is a federal law question." Greenwood, 527 F.3d at 14 (quotations omitted); see Wallace, 549 U.S. at 388. An action accrues when a "plaintiff has a complete and present cause of action." Id. (quotations omitted.) It is well-settled that

> Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the

---

On this basis, therefore, any allegations of conspiracy are properly dismissed. See Vargas-Torres v. Toledo-Davila, No. 07-2002, 2008 WL 1984057 at *9 (D.P.R. April 30, 2008) ("Merely asserting that a conspiracy existed is insufficient to withstand defendants' motion to dismiss." (quotations omitted)).

> action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.

Moran Vega, 537 F.3d at 20 (quotations, citations, and emphasis omitted). First Circuit precedent in the discrimination context makes clear that accrual begins "at the first discrete act." Marrero-Gutierrez v. Molina, 491 F.3d 1, 6 (1st Cir. 2007).

Hecking's claim[12] was brought well outside the limitations period. It is therefore not properly before this court. Hecking's pleadings establish that by Fall 2003 at the latest, Hecking knew that defendant Barger would neither investigate nor pursue remedial actions regarding his fraud allegations. He therefore knew that his workers' compensation appeals would be impacted by the alleged fraud, and that he would not be "protected." Because the New Hampshire limitations period is three years, the defendant had until Fall 2006 to file his claim. Having failed to do so, his action is time barred. Cf. Marrero-Gutierrez, 491 F.3d at 5-6.

Hecking attempts to circumvent his statute of limitations problem with the argument that he was unaware of his asserted legal remedy "until the presidential election campaign, which

---

[12] This assumes, without deciding, that Hecking's claim is even actionable. See supra note 5.

12

brought him to examine Civil Rights law 'for real,' and to his discovery of § 1983." Pl.'s Reply at 3.  He contends, therefore, that the limitations period began to run sometime "in 2007-2008, because it was only then, he came to comprehend he was allowed to go outside the RSA's for a remedy for defendant crime.  A crime which had been going on, behind the scenes, since January 29, 2002."[13]  Reply at 16.  The Court of Appeals has specifically rejected, on more than one occasion, a plaintiff's contention that a cause of action can exist in "a state of suspended animation" until discovery by a plaintiff of the relevant legal theories.  Marrero-Gutierrez, 491 F.3d at 6 (quotations omitted); see, e.g., Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005) (section 1983 claim involving unlawful taking of property accrued on date of wrongful appropriation).

Hecking further claims that his cause of action is rescued from a statute of limitations bar because the defendants' acts comprise a "continuing violation" of his rights.  This narrow doctrine allows a plaintiff to recover for wrongful acts occurring after the statute of limitations has run.  Perez-Sanchez v. Pub. Hous. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

---

[13]This date roughly correlates with the date that Hecking's employer and carrier submitted paperwork to the Department of Labor.

"The continuing violation doctrine creates an equitable exception to the [limitations period] when the unlawful behavior is deemed ongoing." Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998) (partially overruled on other grounds, see Crowley v. L.L. Bean, Inc., 303 F.3d 387 (1st Cir. 2002)). This is a limited doctrine, however, and

> it does not allow a plaintiff to avoid filing suit so long as some person continues to violate his rights. The 'continuing violation' doctrine is misnamed. The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.

Perez-Sanchez, 531 F.3d at 107 (ellipses omitted and emphasis added). Thus, it is not a continuing violation where the plaintiff suffers continuing harmful effects from an original unlawful act. See, e.g., id.; see also Muniz-Rivera v. United States, 204 F. Supp. 2d 305, 315 (D.P.R. 2002) (collecting cases). Courts must be careful, therefore, to differentiate between a discrete harmful act and "the ongoing injuries which are the natural, if bitter, fruit of such acts." Gilbert, 932 F.2d at 58 (quotations omitted).[14] A generous reading of

---

[14] Where federal civil actions are subject to state statutes of limitations, state law generally governs the determination of whether equitable tolling applies. See Rodriguez Navarez v. Nazario, 895 F.2d 38, 42 (1st Cir. 1990); cf. Edes, 417 F.3d at 139-140 n.8. Until recently, the applicability of the doctrine in New Hampshire was in question. Cf. Pierce v. Metro. Life Ins. Co., 307 F. Supp. 2d 325, 328 n.2 (D.N.H. 2004) (noting that at

Hecking's allegations places the first discrete act in Fall 2003, when defendant Barger notified Hecking that the department would not proceed with any investigation of alleged fraud. Any subsequent failure by the defendants to re-investigate or "protect" Hecking from fraudulent acts that "passed the threshold of the department of labor" was simply a continuation of that first discrete act. Put another way, Hecking's claim "blossomed," see Perez-Sanchez, 531 F.3d at 107, with Barger's 2003 refusal to investigate Hecking's fraud claims any further.[15]

---

the time, the continuing violation doctrine did not apply because the New Hampshire Supreme Court had "shown no inclination to incorporate the doctrine as an exception to the state's general statutes of limitation." (quotation and brackets omitted)). More recently, however, the New Hampshire Supreme Court indicated its willingness to consider the doctrine's applicability in tort, see Singer Asset Fin. Co., LLC v. Wyner, 156 N.H. 468, 478 (2007)(tortious interference), and noted with approval the general rule that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Id. (quotations omitted). The court thus assumes for the sake of argument, without deciding, that it is applicable, cf. Edes, 417 F.3d at 139 (assuming applicability in the ERISA context), and concludes that Hecking has not sufficiently alleged a continuing tort.

[15]Hecking claims that the limitations period did not begin to run until 2008 because until the "administrative protocol" finished, he could not have "discovered I was lied to all along." Pl.'s Reply at 20. "Because Section 1983 borrows from state law to determine the length of its limitations period, we look to state law for tolling principles." Moran Vega, 537 F.3d at 21. Under New Hampshire law, "the statute of limitations period is not tolled during a pending administrative proceeding unless that proceeding is a prerequisite to pursuit of the civil action." Dobe v. Comm'r., N.H. Dep't of Health & Human Svcs., 147 N.H.

Hecking "obfuscates what [the court of appeals has] termed the critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (quotations omitted). He had knowledge of the alleged inaction at least as early as September 2003. Any injuries he suffered after that point were merely the ongoing consequences of that initial act.[16]

---

458, 461-62 (N.H. 2002) (quotations omitted). Here, the underlying administrative proceeding involved determination of Hecking's workers' compensation benefits. As Hecking makes clear on multiple occasions, the suit at hand involves alleged inaction by the defendants that is distinct from, and generates damages separate from, lost benefits. See Dobe, 147 N.H. at 462 (limitations period in negligence action against Department of Human Services not tolled by administrative abuse proceedings because administrative decision not a prerequisite to civil action). Indeed, in his letter to Barger in October 2003, Hecking discusses his intent to file suit in federal court in Indiana even though he expects the Department of Labor to reverse the denial of benefits.

[16]To the extent that Hecking alleges a continuing tort, see Maslauskas v. United States, 583 F. Supp. 349, 351 (D. Mass. 1984), that would accrue when the tortious conduct ceases, see Muniz-Rivera, 204 F. Supp.2d at 315, the court finds this argument unpersuasive. In her September 2003 letter, Defendant Barger informed Hecking that she had reviewed his allegations, and that "[w]hile you may well feel aggrieved and misused by your employer, there is no evidence in the file that would support a legal finding of fraud." This is the act complained of by Hecking, and the Department's refusal to effectively re-investigate his claims was merely the continuing effect of this decision. It was not a continuing tort that Hecking's subsequent appeals remained unsatisfied. To hold otherwise would make it a tortious act for the Department of Labor to fail to "review and re-review" administrative decisions like the one made by Barger in 2003. Cf. Maslauskas, 583 F. Supp. at 351 (no continuing duty

16

As such, the limitations period began to run no later than 2003 and Hecking was required to file this action at least by 2006. Hecking even concedes "that over time the records will show me doing this and that, more an[d] less, making claims and letting things pass."[17] Pl.'s Reply at 20. Accordingly, Hecking failed to timely file this § 1983 action and it is appropriately dismissed.[18]

---

on government "to review and re-review, in search of possible legal errors, its decisions to issue parole violator warrants").

[17]The fact that Hecking submitted motions "for declaratory judgment" to defendant Copadis in 2007 and 2008 does not change the analysis. Hecking appears to rely on "denial" of these motions as support for his contention that he could not have "discovered I was lied to all along" and therefore the statute of limitations was tolled until 2008. As discussed supra, the law is clear that accrual begins at the first discrete act. See Moran-Vega, 537 F.3d at 20. If the court were to accept Hecking's argument to the contrary, then any plaintiff could indefinitely toll the limitations period for claims based on fraud or inaction by simply filing motions ad infinitum alleging failure to act.

[18]Where a court determines that all the plaintiff's federal claims are properly dismissed, the court will abstain from exercising supplemental jurisdiction over any state law claims. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998); Rivera-Sanchez v. Autoridad de Energia Electrica, 360 F. Supp. 2d 302, 319 (D.P.R. 2005) (where federal claims have been dismissed and only state law claims remain, courts have discretion to decline to exercise jurisdiction over the case). The court questions the existence of such state law claims based on the fairly indecipherable nature of the complaint. To the extent that any state law claims remain, however, those claims properly are dismissed without prejudice. See Rivera-Sanchez, 360 F. Supp. 2d at 319.

## IV. <u>CONCLUSION</u>

The defendants' motion to dismiss (document no. 23) is granted. The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated: February 23, 2010

cc: Dirck Hecking, pro se
    Karen A. Schlitzer, Esq.